Filed 4/29/16  P. v. Barnett CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BRIAN BARNETT,<br><br>    Defendant and Appellant. | D065324<br><br><br>(Super. Ct. No. SCD249351) |


APPEAL from a judgment of the Superior Court of San Diego County,

Sharon B. Majors-Lewis, Judge.  Affirmed.


Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and

Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Andrew

Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Brian Barnett of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1); count 1). The jury further found true special circumstance allegations of personal infliction of great bodily injury (§ 12022.7, subd. (a)) and personal use of a dangerous or deadly weapon (§ 1192.7, subd. (c)(23)). The jury also found a prior serious felony conviction (§ 211) and a prison prior conviction (Health & Saf. Code § 11352, subd. (a)). The trial court sentenced Barnett to 17 years in prison.

On appeal Barnett contends the trial court erred by denying his motion under section 1118.1 for a judgment of acquittal because there was insufficient evidence in the prosecution's case to support a finding that he did not act in self-defense. In addition, Barnett contends the trial court prejudicially erred by instructing the jury regarding self-defense after an attacker is disabled or danger ceases (CALCRIM No. 3474). We are unpersuaded by these contentions and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Evidence*

On the night of June 21, 2013, Barnett and Frederick Morao had a loud argument at a residential hotel in San Diego. The two men were friends and Barnett was temporarily staying with Morao. Morao had purchased methamphetamine from Barnett, and both had consumed "a lot" of "crystal meth" that day. The men argued about money Barnett claimed Morao owed him for the methamphetamine.

---

[1]     Further statutory references are to the Penal Code unless otherwise stated.

2

Earlier in the day, Morao had witnessed Barnett hit Devon Clements (a friend of Morao's), with sufficient force to knock him down. During the argument, Morao told Barnett "I ain't Devon. You ain't going to hit me like Devon." One of the two men said something like "We'll handle this," or "[l]et's hit the corner" and Morao walked away from the hotel. Barnett followed behind. Morao carried the bottom part of a pool cue (approximately two feet long and two inches in diameter) concealed inside his sweater. He had it with him because he knew Barnett carried weapons, including a serrated knife with a four- to five-inch blade. When Barnett got close to Morao, Morao turned around, thinking Barnett was going to "swing, hit me some kind" and "swung too," swinging the pool cue at Barnett. Barnett was able to disarm Morao of the pool cue before being struck. Morao then began throwing punches at Barnett, many of which landed.

Clements followed slowly behind the men and saw Barnett holding a cylindrical object about a foot and a half long during the fight. Clements initially stated he did not see Barnett use the object on Morao, but later testified it did make contact with Morao. Clements originally described the object as looking like a rolling pin and testified it was wider than the pool cue. Morao felt blows to his chest and stomach during the fight. The brief fight stopped when Morao felt like he "got enough hits in," and Morao and Barnett separated.[2] Barnett walked away limping and yelling something. Morao joined

---

[2]    Based on the video evidence, summarized by San Diego Police Detective Christopher Tews (Detective Tews), the struggle between the two men lasted between 30 seconds and a minute. However, the videotape documenting the struggle showed only the "footwork" of the two men during the fight.

3

Clements and said something like "I got him." The two men gave each other "daps," a celebratory gesture. Morao and Clements then walked back toward the hotel and Morao realized he was bleeding heavily. After Morao reached the lobby, the hotel security guard called an ambulance. Morao lost consciousness after the paramedics arrived and the next thing he remembered is waking up after surgery. Morao remained in the hospital for a week.

Morao had multiple stab wounds, at least one to the left side of his stomach and one on his back. A doctor told Morao there were 14 stab wounds. Clements also recalled hearing from a police officer that Morao was stabbed 14 to 16 times and might not make it. In addition, the investigating officer, Detective Tews, recalled hearing from police officers at the scene that Morao was stabbed 14 times, but was unable to personally verify the number.

Detective Tews interviewed Morao. Morao initially told Detective Tews he had been jumped by two Hispanic men. Morao had prior felony convictions including petty theft, possession of methamphetamine for sale, petty theft with a prior, and robbery. He used his "felon mentality" when first speaking with the police. After learning about surveillance video of the incident, Morao told Detective Tews the truth about what happened, explaining he made up the initial story because he did not want to be a rat.

Detective Tews also interviewed Barnett. Barnett denied stabbing Morao. Barnett told Detective Tews Morao tried to hit him with a pool cue, he took the cue away, Morao ran and was then attacked from behind by a "Hispanic dude." Barnett admitted he always

4

carried a knife and he had a black, foot-long, serrated knife with him at the time of the incident, but denied using the knife on Morao.

On June 21, 2013, Morao was either 5'3" or 5'7" and weighed around 205 or 210 pounds. Barnett is significantly taller than Morao. Morao felt threatened by the size disparity due to Barnett's advantage of height and "reach." Morao was very soft spoken and nervous during Barnett's cross-examination. Morao does not like weapons, does not know anything about knives, and does not need a knife. However, Barnett had promised to get Morao a knife.

*Section 1118 Motion for Acquittal*

At the close of the prosecution's case, Barnett moved for acquittal under section 1118. He argued there was insufficient evidence to show he used a knife. He further argued evidence showed Morao had a concealed pool cue, which he attempted to strike Barnett with, Barnett took the cue away from him and Morao swung and hit Barnett 20 times. Barnett asserted he "had an absolute right to defend himself" under those circumstances. The trial court denied the motion, noting although evidence established Morao (the smaller individual) initially had a pool cue, any force Morao used after being disarmed "did not justify the deadly force that [Barnett] used when he stabbed him in the gut." The court therefore ruled there was sufficient evidence for a reasonable jury to find Barnett guilty.

*Defense Evidence*

Barnett represented himself. Barnett first called Dr. Murphy, a forensic psychologist, who testified about the fight or flight syndrome and similar responses of

5

people using crystal methamphetamine. Barnett also called San Diego Police Officer Carlos Munoz (Officer Munoz), who had written a report of the incident stating Morao was stabbed 14 times. Hospital staff had informed Officer Munoz of the 14 stab wounds, but the specific source was not identified in his report and he could not recall who it was. Officer Munoz did not take pictures of any of the stab wounds.[3]

Barnett took the stand. He described his relationship with Morao as one in which Morao depended upon him to "help him out" by supplying crystal methamphetamine and testified he would come from various locations in Southern California, at his own expense, to supply Morao. The fight with Morao occurred because Morao was angry that Barnett's friends would not give him a cheap price on illegal drugs. When Morao said "Let's go handle it," Barnett anticipated a fistfight and believed he "ain't got no problem," as he was "fixing to whip this little chump's ass, you know, for crossing me up, plain and simple." Barnett was not worried about fighting the younger Morao, a "guy in his prime," because "[m]ost youngsters these days, they don't even know how to sling the fist. They can't even fight. You know, I [was] brought up using my hands to defend myself."

---

[3] Barnett also called other police officers and Detective Tews, focusing on the content and numbering of various police reports, Morao's clothing, evidence collection procedures and the investigation of blood evidence to support his theories of investigative incompetence and "another guy did it." Such testimony is not summarized further as it is irrelevant to the issue of self-defense.

Barnett was attacked by Morao and "just defended [him]self." After Barnett took the pool stick away from Morao, Morao ran and Barnett did not pursue him. At the time, Barnett saw Clements following behind, and thought he was going to try to help Morao, but was not worried about being "double team[ed]" by the men. Barnett had a gun in one of his back pockets during the incident, but had no intention of using it. Barnett's "big ol' knife" was in his other back pocket. Barnett was "hit in the nose" by Morao, and there was some bleeding.

Barnett testified he used only his fists on Morao and did not stab him. Instead, Morao was stabbed by a Hispanic male after Barnett disarmed him and Morao ran off into the street. After Barnett took Morao's weapon away, Morao "turned around and he got stabbed."

## DISCUSSION

### I. *Sufficiency of the evidence as to Self-Defense*

A. *Introduction*

Barnett moved under section 1118.1 for entry of judgment of acquittal at the close of the prosecution's case. The trial court denied the motion, finding the prosecution met its burden of circumstantial and direct evidence, including evidence sufficient for the issue of self-defense to go to the jury. Barnett contends the trial court erred, because the prosecution advanced insufficient evidence to show Barnett was not acting in self-defense. We disagree.

B. *Standard of review*

" ' "The standard applied by a trial court in ruling upon a motion for judgment of acquittal pursuant to section 1118.1 is the same as the standard applied by an appellate court in reviewing the sufficiency of the evidence to support a conviction, that is, 'whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged.' " [Citation.] "The purpose of a motion under section 1118.1 is to weed out as soon as possible those few instances in which the prosecution fails to make even a prima facie case." [Citations.] The question "is simply whether the prosecution has presented sufficient evidence to present the matter to the jury for its determination." ' " (*People v. Maciel* (2013) 57 Cal.4th 482, 522.)

" 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Houston* (2012) 54 Cal. 4th 1186, 1215.).

"Notably, however, '[r]eview of the denial of a section 1118.1 motion made at the close of a prosecutor's case-in-chief focuses on the state of the evidence as it stood at that point.' " (*People v. Hajek and Vo* (2014) 58 Cal. 4th 1144, 1183.)

8

C. *Assault with a Deadly Weapon and Self-Defense*

To convict on assault with a deadly weapon, the prosecution must prove "[t]he defendant did not act (in self-defense/ [or] in defense of someone else)." (CALCRIM No. 875.) To determine whether self-defense applies, a trier of fact generally must determine "whether the circumstances would cause a reasonable person to perceive the necessity of defense, whether the defendant actually acted out of defense of himself, and whether the force used was excessive." (*People v. Clark* (1982) 130 Cal.App.3d 371, 378, abrogated on another point by *People v. Blakeley* (2000) 23 Cal. 4th 82, 92.) "[A]ny right of self-defense is limited to the use of such force as is reasonable under the circumstances." (*People v. Pinholster* (1992) 1 Cal. 4th 865, 966, overruled on other grounds in *People v. Williams* (2010) 49 Cal. 4th 405, 459.) "[A]lthough the test is objective, reasonableness is determined from the point of view of a reasonable person in the defendant's position. The jury must consider all the facts and circumstances it might ' "expect[] to operate on [defendant's] mind." ' " (*People v. Minifie* (1996) 13 Cal. 4th 1055, 1065.) In the context of an assault with a deadly weapon, a defendant must show a reasonable fear of "great bodily injury"—the rule of self-defense in homicide cases applies equally to cases of felonious assault. (*People v. Lopez* (1948) 32 Cal.2d 673, 675.) Explained another way, in such cases "[t]he justification of self-defense requires a double showing: that defendant was actually in fear of his life or serious bodily injury and that the conduct of the other party was such as to produce that state of mind in a reasonable person." (*People v. Sonier* (1952) 113 Cal.App.2d 277, 278.)

9

Barnett asserts the prosecution failed to prove its case because a defendant must be allowed to use a weapon other than fists if his own fists are "inadequate to the task" and he finds himself at risk of serious injury. However, the record does not establish Barnett was at risk for serious injury during the fight with Morao. On appeal, Barnett argues "fists can do tremendous damage" and inflict "great bodily injury," citing to boxing matches and pictures in assault cases, but fails to identify any evidence of Morao possessing such dangerous fists, or any particular fighting expertise. Barnett further speculates it was possible Morao could have had a weapon other than the pool cue, because he was a drug user, dealer and criminal and many people now carry concealed guns. However, Barnett points to no evidence to support any reasonable belief Morao was armed after Barnett took the pool cue or Barnett was otherwise under threat of death or great bodily harm.[4]

Under these circumstances, the court properly determined that the prosecutor presented sufficient evidence to negate Barnett's self-defense claim. The evidence viewed most favorably to the prosecution establishes Barnett used unreasonable force in the fight between two friends, defeating his claim of lawful self-defense. Earlier in the day, Barnett had hit another man hard enough to knock him down. Although Morao swung at Barnett with part of a pool cue, Barnett disarmed Morao before being struck. Morao was able to get in a number of punches after being disarmed, but Barnett was

---

[4]    Notably, Barnett did not present any evidence at trial as to his state of mind during the fight to support a self-defense theory. Under Barnett's theory of the case, he took the pool cue from Morao, Morao ran from him and was stabbed by someone else.

10

taller and had better reach. Morao felt threatened by the size disparity due to Barnett's advantage of height and "reach." Morao, the smaller man, appeared intimidated by Barnett at trial. The entire altercation lasted seconds to a minute, yet Morao suffered multiple stab wounds, including an abdominal wound that left him hospitalized for a week. Barnett admitted to being in possession of a foot-long knife with a serrated blade.

On this record, there was substantial evidence for a reasonable trier of fact to conclude that Barnett used excessive force in stabbing a disarmed Morao, overcoming any claim of lawful self-defense. The trial court did not err in denying acquittal.

II. *Jury Instruction CALCRIM No. 3474*

A. *Introduction*

Barrett also claims the court improperly instructed the jury under CALCRIM No. 3474 [Danger No Longer Exists or Attacker Disabled], over Barnett's objection. Specifically, he argues the instruction had no application to the facts and should not have been given. Barnett contends the instruction implicated his constitutional rights and provision of the instruction resulted in prejudicial error. We are not persuaded by his arguments.

B. *Standard of review*

We review a claim of instructional error de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) "Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.' [Citation.] ' "In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole … [and] assume that the jurors are intelligent persons

11

and capable of understanding and correlating all jury instructions which are given."

[Citation.]' [Citation.] 'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' " (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)

"Giving an instruction that is correct as to the law but irrelevant or inapplicable is error." (*People v. Cross* (2008) 45 Cal.4th 58, 67.) Although it is error to give an instruction, which correctly states a principle of law but has no application to the facts of the case, if it is the only error, it does not implicate federal constitutional rights. (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.) Such error is generally one of state law subject to the traditional *Watson* test, which requires reversal if it is reasonably probable the result would have been more favorable to the defendant had the error not occurred. (*Id.* at p. 1130; *People v. Watson* (1956) 46 Cal.2d 818, 836.) To determine whether there was prejudice, we examine the entire record, including the facts and the instructions, the arguments of counsel, any communications from the jury during deliberations, and the entire verdict. (*Guiton*, *supra*, at p. 1130.)

C. *Analysis*

Barrett claims it was prejudicial error to instruct the jury with CALCRIM No. 3474. CALCRIM No. 3474 provides, "The right to use force in self-defense continues only as long as the danger exists or reasonably appears to exist. When the attacker no longer appears capable of inflicting any injury, then the right to use force ends." Barnett contends the "instruction had no application to the facts and never should have been given." In addition, he characterizes the instruction as improperly bolstering the

12

prosecution's argument Barnett "lost his right to self-defense with a knife the moment Morao lost his pool stick." Barnett asserts that giving the instruction amounts to a deprivation of his right to due process under the Fourteenth Amendment to the United States Constitution. Barnett therefore seeks review of any error under the test of *Chapman v. California* (1967) 386 U.S. 18, 24, which requires reversal, unless the error is shown to be harmless beyond a reasonable doubt. Barnett does not maintain CALCRIM No. 3474 itself is an incorrect statement of law, or that the court misstated the instruction.

At trial, CALCRIM No. 3474 was part of a series of instructions relating to self-defense.[5] The court also instructed the jury under CALCRIM No. 3470 [Right to Self-Defense], which states, as given:

> "Self-defense is a defense to assault with a deadly weapon. The defendant is not guilty of that crime if he used force against the other person in lawful self-defense. The defendant acted in lawful self-defense if: [¶] 1. The defendant reasonably believed that he was in imminent danger of suffering bodily injury; [¶] 2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger; [¶] AND [¶] 3. The defendant used no more force than was reasonably necessary to defend against that danger.
>
> "Belief in future harm is not sufficient, no matter how great or how likely the harm is believed to be. The defendant must have believed there was imminent danger of bodily injury to himself. Defendant's belief must have been reasonable and he must have acted because of that belief. The defendant is only entitled to use that amount of

---

[5]    In addition to CALCRIM No. 3470 and CALCRIM No. 3474, the court instructed the jury with CALCRIM No. 3471 [Right to Self-Defense: Mutual Combat or Initial Aggressor], but such instruction was not at issue on appeal.

13

force that a reasonable person would believe is necessary in the same situation. If the defendant used more force than was reasonable, the defendant did not act in lawful self-defense.

"When deciding whether the defendant's beliefs were reasonable, consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed. If the defendant's beliefs were reasonable, the danger does not need to have actually existed.

"A defendant is not required to retreat. He or she is entitled to stand his or her ground and defend himself or herself and, if reasonably necessary, to pursue an assailant until the danger of bodily injury has passed. This is so even if safety could have been achieved by retreating.

"The People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. If the People have not met this burden, you must find the defendant not guilty."

In addition, the court specifically instructed the jury under CALCRIM No. 200 [Duties of Judge and Jury], which states in pertinent part:

"Some of these instructions may not apply, depending on your findings about the facts of the case. [Do not assume just because I give a particular instruction that I am suggesting anything about the facts.] After you have decided what the facts are, follow the instructions that do apply to the facts as you find them."

In his closing argument, the prosecutor summarized the elements of CALCRIM No. 3470 and argued Barnett did not satisfy the requirements for lawful self-defense based on the following facts: Barnett had already disarmed Morao; Barnett was armed with three weapons; Morao was fighting with no more than his bare hands; Morao is smaller than Barnett and has a shorter reach. The prosecutor also referenced CALCRIM

14

No. 3474 and argued Barnett no longer had the right to use self-defense with a weapon after he had disarmed Morao.

The jury found Barnett guilty, therefore necessarily finding he did not act in self-defense. Even if we assume the instruction under CALCRIM No. 3474 was not adequately supported by the evidence, any error in giving the instruction was harmless.

The jury was instructed under CALCRIM No. 3470 regarding the elements of self-defense. The prosecutor referred to both instructions in his closing arguments, emphasizing CALCRIM No. 3470. Barnett has not pointed to any indication in the record showing the jury did not understand CALCRIM No. 3470 or otherwise ignored the instruction because it also received CALCRIM No. 3474. Both instructions correctly state the law.

The court instructed the jury, under CALCRIM No. 200, not to assume that all instructions applied and to "follow the instructions that do apply to the facts as you find them." "While such an instruction does not render an otherwise improper instruction proper, it may be considered in assessing the prejudicial effect of an improper instruction." (*People v. Saddler* (1979) 24 Cal.3d 671, 684 [concluding error was not prejudicial, in part, because the jury was instructed under CALJIC No. 17.31 "that they were to 'disregard any instruction which applies to a state of facts which you determine does not exist' "].) "Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions." (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) There is nothing here to suggest otherwise.

15

Moreover, as discussed in the previous section, the prosecution offered ample evidence for a reasonable jury to find Barnett used unreasonable force. Barnett was bigger, with better reach. He readily disarmed Morao. He had knocked a man to the ground earlier in the day with a blow from his fists. Barnett had a foot-long serrated knife and the fight left Morao with multiple stab wounds and a week-long hospital stay. The fight lasted only seconds to a minute. Consequently, Barnett must have started using his knife within seconds after physical contact began.

In presenting his case, Barnett supplied additional evidence to negate lawful self-defense: Barnett stated he did not have a "problem" fighting Morao; he planned to "whip [his] ass," and he was not worried about fighting the younger man because he was "brought up using my hands to defend myself." Barnett presented no evidence that he had fear for his life or of great bodily injury during the fight. Although Morao may have initiated the physical contact and was apparently able to hold his own during the brief altercation, Barnett's decision to use his knife was not reasonable under the circumstances.

Our review of the record shows overwhelming evidence Barnett used excessive force, precluding lawful self-defense. A reasonable jury would not have reached a different conclusion even if CALCRIM No. 3474 had not been given. We therefore conclude any error was harmless under either federal or state standards (*Chapman v. California*, *supra*, 386 U.S. at p. 24; *People v. Watson*, *supra*, 46 Cal.2d at p. 836.).

16

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

BENKE, J.

PRAGER, J.*

---

\*     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.